**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:20-cv-3170</u>

FALLEN PRODUCTIONS, INC.,

      Plaintiff,

v.

DOES 1-17,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Fallen Productions, Inc., ("Plaintiff") file this Complaint against Defendants DOES 1-17 ("Defendants") and alleges as follows:

### I.    NATURE OF THE ACTION

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.    The Plaintiff alleges that Defendants are liable for: (1) direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

### II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

20-022B

4.      Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.      Upon information and belief, Defendants DOES 3-5, 7-10 and 12-17 registered for paid accounts for Virtual Private Network ("VPN") service with the Colorado Internet Service Provider Private Internet Access ("PIA").   When registering for VPN service with PIA, each of the Defendants DOES XX-YY agreed to be subject to jurisdiction of Courts in Colorado as shown below.



6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims

20-022D

occurred in this District; (b) the Defendants reside or resided, and therefore can or could be found, in this District; and/or (c) Defendants are subject to the court's personal jurisdiction with respect to the present action.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(b (venue for copyright cases), because the Defendants or Defendants' agents resides and can be found in this District.

### III.    PARTIES

### A.   The Plaintiff

7.      Plaintiff is a corporation organized under the laws of the State of Nevada, having principal offices in Los Angeles, California and is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.

8.      The Plaintiff is the owner of the copyrights for the screen play and motion picture in the movie *Angel Has Fallen* ("Work") featuring Gerard Butler, Frederick Schmidt and Danny Huston.

9.      The Work tells the story of Secret Service Agent Mike Banning (Gerald Butler) wrongfully accused and taken into custody after an assassination attempt on U.S. President Allan Trumbull, his trusted confidant. After escaping from capture, he becomes a man on the run and must evade his own agency and outsmart the FBI in order to find the real threat to the President.  Desperate to uncover the truth, Banning turns to unlikely allies to help clear his name, keep his family from harm and save the country from imminent danger.

### B.   The Defendants

10.     The Defendants are members of a group of BitTorrent users or peers

20-022D

whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number and a file name.

11.     Each of the Defendants registered for an account with a notorious piracy website known as YTS using an email address (*see e.g.,* Exhibit "3") or used a BitTorrent Client to automatically retrieve torrent files from the YTS website, downloaded the *Angel Has Fallen* torrent file from the YTS website, and reproduced, shared and distributed copies of the motion picture under the file name "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]" as well as many other copyright protected Works from IP addresses in Colorado and/or of Colorado companies.

12.     The YTS website is currently accessible at YTS.MX and was previously accessible at YTS.AM, YTS.AG and YTS.LT.

13.     The YTS website is known for distributing torrent files of copyright protected motion pictures.

20-022D





14.     In stipulated judgments resolving lawsuits filed in the District of Hawaii, the operators of the YTS website, Senthil Segaran and Techmodo Limited, conceded that

20-022D

one or more third parties uploaded torrent files of motion pictures to the YTS website and that the YTS website provided links for distributing the torrent files. *See Venice PI, LLC et al. v. NGUYEN DINH MANH, et al.*, 1:19-cv-169-LEK-KJM, Doc. #77; *Wicked Nevada, LLC vs. Senthil Vijay Segaran*, 1:19-cv-413-SOM-KJM, Doc. #25; and *HB Productions, Inc. vs. Senthil Vijay Segaran*, 1:19-cv-389-ACK-KJM, Doc. #51.

15.    Upon information and belief, Each of the Defendants received from Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

16.    Defendants Does 3-17 have ignored repeated communications from Plaintiff's counsel requesting them to cease and desist his unlawful activity and pay a portion of Plaintiff's damages.

17.    Defendants DOES 3-5, 7-10, and 12-17 used the VPN service of PIA to try to conceal their illicit activities.

18.    The Internet Service Provider provided the Internet service for Defendants at the time of the above infringements.  The email service provider provided the email accounts Defendants DOES 3-17 used to login to the YTS website.  Plaintiff intends to subpoena the ISPs and email providers to learn the subscriber identity of Defendants.

19.    Further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiff believes that information obtained in discovery will lead to the identification of each Defendants' true names and permit the Plaintiff to amend this Complaint to state the same.  Plaintiff further believes that the

6

20-022D

information obtained in discovery may lead to the identification of additional infringing parties to be added as Defendants.  Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined.  Plaintiff is informed and believes, and based thereon allege, that the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

## IV.    JOINDER

20.    Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that the infringement of its Work *Angel Has Fallen* complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are common questions of law and fact.  Moreover, the infringements of the Work complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Work, and, upon information and belief, was accomplished by the Defendants acting in concert with each other.

## V.    FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyrights to the Works

21.    The Plaintiff is the owner of the copyrights in the screenplay (PAu003917080) and motion picture (PA0002197434) in the Work.  The Work is the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.

20-022D

22.     Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

23.     Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

24.     The Works are motion pictures currently offered for sale in commerce.

25.     The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiffs' Works.

26.     Defendants used the YTS website to download the torrent file "Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]" associated with Plaintiff's Work.

27.     The Defendants knew the torrent file they downloaded would be used to illegally download and share copies of the Work.

28.     The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage.  Upon information and belief, this warning has appeared on the YTS website since at least 2018.



**B. Defendants Used BitTorrent To Infringe the Plaintiff's Copyrights.**

20-022D

29.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

30.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

***1. Defendants installed a BitTorrent Client onto his or her Computer.***

31.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

32.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

33.     Each of Defendants installed a BitTorrent Client onto his computer.

***2. The Initial Seed, Torrent, Hash and Tracker***

34.     A BitTorrent user that wants to upload the new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

20-022D

35.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

36.     The initial seeder often modifies the file title of the Work to include a wording such as "RARBG" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.

37.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

38.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

39.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

40.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

41.     The "tracker" is a computer or set of computers that a torrent file specifies

10

and to which the torrent file provides peers with the URL address(es).

42.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

43.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

44.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the YTS website.

45.     Defendants went to torrent sites including the YTS website to upload and download Plaintiff's copyrighted Work.

### 4. The Peer Identification

46.     The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

47.     Each Defendant was assigned a Peer ID by their BitTorrent client.

### 5. Uploading and Downloading a Work Through a BitTorrent Swarm

48.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

11

49.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

50.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

51.     In this way, all of the peers and seeders are working together in what is called a "swarm."

52.     Here, Defendants participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions, Plaintiff's Work.

53.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

54.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

**6. The Plaintiff's Computer Investigator Identified the Defendants' DOES 1-**

***2's IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Works.***

55.     The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

56.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

57.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

58.     The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibit 2 accurately reflect what is contained in the evidence logs.

59.     The logged information in Exhibit 2 show that Defendants DOES 1-2 copied pieces of the Plaintiff's copyrighted Works identified by the Unique Hash Number.

60.     The Defendants DOES 1-2's computers used the identified IP addresses in Exhibit 2 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

61.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibit 2 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works.

20-022D

62.     MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

**C. The Operator of the YTS website confirmed that Defendants DOES 3-17 downloaded torrent files for copying the Work from the YTS website.**

63.     The YTS website operator maintained records of activity of registered user accounts.

64.     As shown in pgs. 2-16 of Exhibit "3", the records including the email address of the registered user account, the torrent files the registered account downloaded, the IP address from where the registered user accessed the YTS website, and the time.

65.     The records show that Defendants DOES 3-17 downloaded the torrent file for reproducing the Work, the same file copy MEU's agent verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works.

66.     Capture records from MEU show that Defendants DOES 3-17 were sharing copies of the Work shortly after they downloaded the torrent file.  Upon information and belief, Defendants 3-17 used the BitTorrent Client app to reproduce and share copies of the Work.

**C. Defendants knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiffs.**

20-022D

67.   A legitimate file copy of the Work includes copyright management information ("CMI") indicating the title.

68.   The initial seeder of the infringing file copies of Plaintiff's Work added wording to the file titles to "brand" the quality of piracy files he or she released and attract further traffic to his or her website.

69.   For example, the initial seeder of the infringing file copies of *Angel Has Fallen* added the wording "YTS" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the YTS website.

70.   The word YTS is not included in the file title of legitimate copies or streams of the Plaintiff's Works.  The initial seeders of the Work altered the title to falsely include the words "YTS" in the CMI.

71.   The file copies Defendants distributed to other peers in the Swarm included the altered CMI in the file title.

72.   Defendants knew that the website from which they obtained their torrent files was distributing illegal copies of the Work.

73.   Defendants knew that YTS was not the author of Plaintiff's Work.

74.   Defendants knew that YTS was not a licensed distributor of Plaintiff's Work. Indeed, the YTS website includes a warning to this effect.

75.   Defendants knew that the CMI that included YTS in the file names was false.

76.   Defendants knew that the file copies of the Work that they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

20-022D

77.     Defendants knew that the CMI in the title they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

78.     Defendants knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Work when they distributed the false CMI, altered CMI or Works including the false or altered CMI.

79.     Namely, Defendants knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtained unlicensed copies of the Work.

80.     By providing the website in the altered CMI to others, Defendants induced, enabled and facilitated further infringements of the Work.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

81.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

82.     Plaintiff is the registered copyright owner of the Work which contains an original work of authorship.

83.     Defendants copied the constituent elements of the copyright protected Work *Angel Has Fallen*.

84.     Defendants also publicly performed and displayed the copyright protected Work *Angel Has Fallen*.

85.     By participating in the BitTorrent swarms with others, Defendants distributed at least a piece of the copyright protected Work *Angel Has Fallen* to others.

20-022D

86.    Plaintiff did not authorize, permit, or provide consent to Defendants to copy, reproduce, distribute, publicly perform, or display the Work.

87.    As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

88.    As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to distribute copies of the Work in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

89.    As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to perform the Work publicly, in violation of 17 U.S.C. §§ 106(4) and 501.

90.    Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

91.    Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

### VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

92.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

93.    By participating in the BitTorrent swarms with others, Defendants induced, caused or materially contributed to the infringing conduct of the copyright protected Work *Angel Has Fallen* by others.

94.    Plaintiff did not authorize, permit, or provide consent to the Defendants

20-022D

inducing, causing, or materially contributing to the infringing conduct of others.

95.     Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that s original.  Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

96.     The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

97.     By engaging in the contributory infringement alleged in this Complaint, the Defendants deprived not only the producers of the Work from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

## VIII. THIRD CLAIM FOR RELIEF

### (Digital Millennium Copyright Act Violations)

98.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

99.     Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work *Angel Has Fallen* distributed copyright management information ("CMI") that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

20-022D

100.   Defendants, without the authority of Plaintiff, or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of Plaintiff and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Work *Angel Has Fallen* in violation of 17 U.S.C. § 1202(b)(2).

101.   Defendants, without the authority of Plaintiff, or the law, distributed Plaintiff's Copyright protected Work *Angel Has Fallen* knowing that the CMI had been removed or altered to include the wording "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

102.   Particularly, the Defendants knew that the CMI in the file names of the pieces had been altered to include the wording "YTS".

103.   Particularly, the Defendants distributed the file names that included CMI that had been altered to include the wording "YTS".

104.   Defendants knew that the wording "YTS" originated from the notorious movie piracy website for which each had registered accounts.

105.   Defendants' acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

106.   Plaintiff is entitled to an injunction to prevent Defendants from engaging in further violations of 17 U.S.C. § 1202.

107.   Plaintiff is entitled to recover from Defendants the actual damages suffered by Plaintiff and any profits Defendants have obtained as a result of their wrongful acts

19

20-022D

that are not taken into account in computing the actual damages. Plaintiff is currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

108.   Plaintiff is entitled to elect to recover from Defendants statutory damages for their violations of 17 U.S.C. § 1202.

109.   Plaintiff is further entitled to costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendants which they used to infringe Plaintiff's Work immediately cease said service;

(C) award the Plaintiff its actual damages from the copyright infringements and Defendants' profits in such amount as may be found; alternatively, at Plaintiff's election, for statutory damages pursuant to 17 U.S.C. § 504(a) and (c);

(D) award the Plaintiff actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at Plaintiff's election, for statutory damages per DMCA violation pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

20-022D

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, October 22, 2020.


/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:    (808) 464-4047
Facsimile:     (202) 204-5181
E-Mail:          kculpepper@culpepperip.com
Attorney for Plaintiff Fallen Productions, Inc.

20-022D