**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:20-cv-3170-PAB-NRN</u>

FALLEN PRODUCTIONS, INC.,

     Plaintiff,

v.

KELTON WADE SHRIVER;
MIRANDA LOUISE DEWITT;
ANDREW PATERSON;
ROBERT OBRIEN;
DAMIAN BRAY;
JUSTIN MCWHORTER;
DALE POWERS; and
HECTOR JARAMILO,

     Defendants.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

     Plaintiff Fallen Productions, Inc., ("Plaintiff") files this Second Amended Complaint against Defendants Kelton Wade Shriver and Miranda Louis Dewitt (previously identified as DOE 4), ANDREW PATERSON (previously identified as DOE 3), ROBERT OBRIEN (previously identified as DOE 6), DAMIAN BRAY (previously identified as DOE 7), JUSTIN MCWHORTER (previously identified as DOE 12), DALE POWERS (previously identified as DOE 15), and HECTOR JARAMILO (previously identified as DOE 17) ("Defendants") and alleges as follows:

## I.     NATURE OF THE ACTION

     1.     This matter arises under the United States Copyright Act of 1976, as

20-022B

amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.      The Plaintiff alleges that Defendants are liable for: (1) direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.      Defendants registered for paid accounts for a Virtual Private Network ("VPN") service with an Internet Service Provider ("ISP") that used resources of a Colorado based ISP or an ISP that makes significant use of a data center having servers in Colorado.

6.      Upon information and belief, Defendants registered for paid accounts for VPN service with the Colorado ISP Private Internet Access ("PIA") and, as explained below, used said VPN service of PIA to download, reproduce and distribute copies of Plaintiff's copyright protected motion picture, thereby purposefully directing their tortious conduct at Colorado and thus this District.

2

20-022D

7.     Publicly available records from the American Registry of Internet Numbers ("ARIN") show that Internet Protocol ("IP") addresses used by Defendants as shown in Exhibit "3" were assigned to M247 Ltd and Sharktech, Inc.

8.     M247 Ltd is known for providing the ingress ports for PIA and other US based VPN providers at data centers in Colorado and throughout the United States.

9.     Sharktech, Inc. allocated the IP address 174.128.226.10 (which is at a data center in Colorado)(Exhibit "3", #6) to PIA from 7/15/2018 to 9/1/2020.

10.     When registering for VPN service with PIA, each of the Defendants agreed to be subject to jurisdiction of Courts in Colorado as shown below.



be deemed to be severed from this Agreement.

## CHOICE OF LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado, county of Denver, without regard to conflicts of law principles. The sole and exclusive jurisdiction and venue for any action or proceeding arising out of or related to this Agreement shall be in an appropriate state or federal court located in the State of Colorado, county of Denver. You hereby submit to the jurisdiction and venue of said Courts. You consent to service of process in any legal proceeding.

If Subscriber agrees to all of the foregoing terms and conditions, Subscriber may gain access to and use the Services after completing payment and the account sign up process.

11.     Plaintiff's injuries arise out of defendant's forum-related activities, namely Defendants' infringements of Plaintiff's Work at IP addresses in this District and/or

20-022D

3

controlled by Internet Service Providers in this District.

12.     Particularly, Defendants violated an express term of their registration agreement with PIA – distributing copyright protected content without the authority of owners such as the Plaintiff – as shown below.



Agreement.

## CONDUCT

You agree to comply with all applicable laws and regulations in connection with use of the Services. You must also agree that you and any other user that you have provided access to will not engage in any of the following activities:

- Sending or receiving unsolicited and/or commercial emails in violation of law, promotional materials, "junk mail," "spam," "chain letters," or "pyramid schemes";
- Exploiting, possessing, producing, receiving, transporting, or distributing any illegal content, including but not limited to any sexually explicit depiction of children;
- Uploading, possessing, receiving, transporting, or distributing any copyrighted, trademark, or patented content which you do not own or lack written consent or a license from the content owner;

13.     Third party right holders, including Plaintiff, are third party beneficiaries to the registration agreement between PIA and Defendants.   Indeed, the registration agreement expressly mentions third party rights and benefits to third parties including those of copyright holders intentionally and directly and the third parties are the primary party in interest as shown below.

20-022D

    HOW IT WORKS    DOWNLOAD    SUPPOR

FROM THE FOREGOING RESTS ENTIRELY WITH YOU.

## INDEMNITY

Subscriber agrees to defend, indemnify and hold harmless PIA, its parent corporation,
officers, affiliates, directors, contractors, employees and agents, from and against any and
all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including
but not limited to attorney's fees) arising from:

- your use of and access to the Site and/or Services;
- your material breach of any term of this Agreement;
- your violation of any third party right, including without limitation any copyright, patent,
trademark, property, or privacy right; or
- Any claim that your use caused damage or injury to any third party.

This defense and indemnification obligation will survive termination of this Agreement and
Your use of the Site.

14.     In the alternative, the Court has jurisdiction over Defendants Andrew
Paterson, Damian Bray and Dale Powers pursuant to Fed. R. Civ. P. 4(k)(2), the so-called
federal long-arm statute, for at least the following reasons: (1) Plaintiff's claims arise
under federal law; (2) the Defendants Andrew Paterson, Damian Bray and Dale Powers
purposely directed their electronic activity into the United States; (3) Defendants Andrew
Paterson, Damian Bray and Dale Powers do so with the manifest intent of engaging in
business or other interactions with the United States; (4) the Defendants Andrew
Paterson, Damian Bray and Dale Powers are not subject to jurisdiction in any state's
courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the United
States Constitution and laws.

20-022D

15.     As described more fully below, Defendants Andrew Paterson, Damian Bray and Dale Powers downloaded copies of various United States copyright protected content including Plaintiff's Work from IP addresses at servers in the United States and distributed pieces of the Work to countless other individuals at other IP addresses in the United States including the IP addresses shown in Exhibit "2", thereby directly infringing Plaintiff's exclusive rights of reproduction and distribution in the United States.

16.     Defendants Andrew Paterson, Damian Bray and Dale Powers purposely chose a United States based VPN service.

17.     Defendants Andrew Paterson, Damian Bray and Dale Powers purposely selected United States IP addresses for their VPN service so that they could pirate US content.

18.     Defendants Andrew Paterson, Damian Bray and Dale Powers purposely chose United States IP addresses over other foreign IP addresses (such as in Africa, Europe or Asia) for their VPN service so that they could access US based streaming services in violations of regional restrictions.

19.     Defendants Andrew Paterson, Damian Bray and Dale Powers pay for their VPN service with a US payment provider.

20.     Defendants Andrew Paterson, Damian Bray and Dale Powers use US based email providers (Google and Hotmail) to register for and use their VPN service.

21.     Defendants Andrew Paterson, Damian Bray and Dale Powers used US based email providers (Google and Hotmail) to register for and use their accounts with piracy websites including the YTS website.

6

20-022D

22.     Defendant Andrew Paterson and Damian Bray used a cloud storage service provided by the US company Google to store pirated content on servers controlled by Google and in the United States.

23.     Defendant Dale Powers used a cloud storage service provided by the US company Microsoft to store pirated content on servers controlled by Microsoft and in the United States.

24.     Defendants Andrew Paterson, Damian Bray and Dale Powers agreed to policies and terms of use with Microsoft and Google for their cloud storage in which they agreed to be subject to the laws of the United States and jurisdiction of US Courts.

25.     The acceptable use policy of Microsoft and Google prohibits use of the cloud storage service to violate the legal rights, including the intellectual property rights, of others, including Plaintiff's as done by Defendants Andrew Paterson, Damian Bray and Dale Powers. *See* Google Cloud Platform Acceptable Use Policy, https://cloud.google.com/terms/aup [last accessed on Jan. 26, 2021] ("Customer agrees not to…use the Services: to violate… the legal rights of others...")

26.     The terms of use of Microsoft and Google obligate customers to defend and indemnity them against liability arising from breach of the acceptable use policy as done by Defendants Andrew Paterson, Damian Bray and Dale Powers. *See, e.g.,* Google Cloud Platform Terms of Service, 13.2 Customer Indemnification Obligations, https://cloud.google.com/terms [last accessed on Jan. 26, 2021] ("Customer will defend Google… and indemnify them against Indemnified Liabilities … arising from …Customer's… use of the Services in breach of the AUP …")

20-022D

27.     The terms of service of Microsoft and Google provide for jurisdiction in the United States.   *See, e.g.,* Google Cloud Platform Terms of Service 15.12(c) U.S. Governing Law,   https://cloud.google.com/terms [last accessed on Jan. 26, 2021] ("ALL CLAIMS ARISING OUT OF OR RELATING … THE SERVICES WILL BE GOVERNED BY CALIFORNIA LAW … AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS").

28.     Plaintiff's injuries further arise out of the US forum-related activities of Defendants Andrew Paterson, Damian Bray and Dale Powers, namely Defendants' infringements of Plaintiff's Work at IP addresses in the US and storing pirated copies on their cloud storage in the US, in violation of the terms of their VPN and cloud storage service.

29.     Particularly, Defendants violated an express term of their cloud storage agreements – storing pirated copies of copyright protected content without the authority of owners such as the Plaintiff – as discussed above.

30.     Third party right holders, including Plaintiff, are third party beneficiaries to the agreements between Microsoft/Google and Defendants Andrew Paterson, Damian Bray and Dale Powers. Indeed, the agreement expressly mentions third party rights and benefits to third parties including those of copyright holders intentionally and directly and the third parties are the primary party in interest as shown above.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims

8

occurred in this District; (b) the Defendants reside or resided, and therefore can or could be found, in this District; and/or (c) Defendants are subject to the court's personal jurisdiction with respect to the present action.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents resides and/or can be found in this District.

32.    Defendant Kelton Wade Shriver (previously identified as DOE 4) resides in this District, particularly, in Colorado Springs, Colorado.

### III.    PARTIES

#### A.   The Plaintiff

33.    Plaintiff is a corporation organized under the laws of the State of Nevada, having principal offices in Los Angeles, California and is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.

34.    The Plaintiff is the owner of the copyrights for the screen play and motion picture in the movie *Angel Has Fallen* ("Work") featuring Gerard Butler, Frederick Schmidt and Danny Huston.

35.    The Work tells the story of Secret Service Agent Mike Banning (Gerald Butler) wrongfully accused and taken into custody after an assassination attempt on U.S. President Allan Trumbull, his trusted confidant. After escaping from capture, he becomes a man on the run and must evade his own agency and outsmart the FBI in order to find the real threat to the President.  Desperate to uncover the truth, Banning turns to unlikely allies to help clear his name, keep his family from harm and save the country from imminent danger.

**B.   The Defendants**

36.     The Defendants are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number and a file name.

37.     Each of the Defendants registered for an account with a notorious piracy website known as YTS using an email address (*see e.g.,* Exhibit "3") or used a BitTorrent Client to automatically retrieve torrent files from the YTS website, downloaded the *Angel Has Fallen* torrent file from the YTS website, and reproduced, shared and distributed copies of the Work under the file name "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]" as well as many other copyright protected Works from IP addresses in Colorado and/of United States companies.

38.     The YTS website is currently accessible at YTS.MX and was previously accessible at YTS.AM, YTS.AG and YTS.LT.

39.     The YTS website is known for distributing torrent files of copyright protected motion pictures.

20-022D





40.     In stipulated judgments resolving lawsuits filed in the District of Hawaii, the operators of the YTS website, Senthil Segaran and Techmodo Limited, conceded that

20-022D

one or more third parties uploaded torrent files of motion pictures to the YTS website and that the YTS website provided links for distributing the torrent files. *See Venice PI, LLC et al. v. NGUYEN DINH MANH, et al.*, 1:19-cv-169-LEK-KJM, Doc. #77; *Wicked Nevada, LLC vs. Senthil Vijay Segaran*, 1:19-cv-413-SOM-KJM, Doc. #25; and *HB Productions, Inc. vs. Senthil Vijay Segaran*, 1:19-cv-389-ACK-KJM, Doc. #51.

41.     Upon information and belief, Each of the Defendants received at least a first notice styled per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

42.     Defendants have ignored repeated communications from Plaintiff's counsel requesting them to cease and desist their unlawful activity and pay a portion of Plaintiff's damages.

43.     Defendants used IP addresses provided by a VPN service to download, reproduce and distribute copies of Plaintiff's Work and to try to conceal their illicit activities.

44.     Defendants used the IP addresses in Exhibit "3" provided by the VPN service of, upon information and belief, PIA to download, reproduce and distribute copies of Plaintiff's Work and to try to conceal their illicit activities.

45.     The Internet Service Provider provided the Internet service for Defendants at the time of the above infringements.  The email service provider provided the email accounts Defendants used to login to the YTS website.

46.     Defendant Kelton Wade Shriver (previously identified as DOE 4) presently

20-022D

resides in Colorado Springs, Colorado.

47.     Upon information and belief, Defendant Kelton Wade Shriver has resided in Colorado Springs, Colorado since September of 2019.

48.     Defendant Miranda Louis Dewitt is the mother of Kelton Wade Shriver and a resident of El Paso County, Texas.

49.     Defendants Kelton Wade Shriver and Miranda Louis Dewitt were assigned an IP address by a United States ("US") based VPN provider publicly identified as being owned by M247 Ltd at the date shown in Exhibit "3" (No. 4).

50.     Defendants Kelton Wade Shriver and Miranda Louis Dewitt used a US email address to login to the YTS website as shown in Exhibit "3" (No. 4) and download a torrent file for copying the Work.

51.     Upon information and belief, Defendants Kelton Wade Shriver and Miranda Louis Dewitt used a BitTorrent Client app to download and distribute copies of the Work shortly thereafter.

52.     Defendant Andrew Paterson is, upon information and belief, an adult male residing in Ontario, Canada.

53.     Defendant Andrew Paterson was assigned IP address by a US based VPN provider publicly identified as being owned by M247 Ltd at the date shown in Exhibit "3" (No. 3).

54.     Defendant Andrew Paterson used his US email address to login to the YTS website as shown in Exhibit "3" (No. 3).

55.     Defendant Andrew Paterson downloaded a copy of the Work and shared

20-022D

copies of the Work from IP address 87.101.93.98 at including but not limited to the following time: 11/27/2019 11:09:46 PM; 11/27/2019 11:12:36 PM; 11/28/2019 12:43:05 AM; 11/28/2019 12:46:19 AM; 11/28/2019 1:43:39 AM; 11/28/2019 1:49:40 AM; 11/28/2019 1:49:42 AM; 11/28/2019 1:57:59 and 5/23/2020 12:43:43 AM.

56.     Defendant Andrew Paterson logged into his US email address from IP addresses publicly identified as owned by M247 Ltd numerous times between 11/21/2020 and 11/26/2020 ("Time Period").

57.     Each of the M247 Ltd IP addresses Defendant Andrew Paterson used to login to his email address during this Time Period are associated with significant infringement of US protected content via BitTorrent, including YTS files, such as, for example, the motion picture *Olympus Has Fallen*, the prequel to the prequel to the Work, from IP address 45.133.180.210 on 8/13/2020 2:21:27 AM.  Upon information and belief, Defendant Andrew Paterson is responsible for downloading the motion picture *Olympus Has Fallen* from IP address 45.133.180.210.

58.     Defendant Robert Obrien is, upon information and belief, an adult male residing in Davis County, Utah.

59.     Defendant Robert Obrien was assigned IP address by a US based VPN provider at the date shown in Exhibit "3" (No. 6).

60.     Defendant   Robert   Obrien   used   the   email   address pokeroborob@gmail.com to login to the YTS website as shown in Exhibit "3" (No. 6).

61.     Defendant Robert Obrien downloaded a copy of the Work and shared copies of the Work from IP address 174.128.226.10 (in Colorado) at including but not

20-022D

limited to the following times: 12/1/2019  1:24:15 AM; 1/23/2020  3:44:25 PM; 1/28/2020

11:23:30 AM; 3/16/2020  11:31:01 AM; 3/18/2020  4:40:58 PM; 4/6/2020  3:28:47 PM;

and 5/26/2020  1:49:57 AM.

62.     Defendant Robert Obrien registered for his email address from IP address

71.195.228.241  in  October  of  2016.    Around  that  same  time  period,  (5/12/2016-

3/29/2017) copies of over 7 copyright protected titles were shared at this IP address over

BitTorrent including the motion picture *London Has Fallen*, the prequel to the Work.

63.     Defendant  Damian  Bray  is,  upon  information  and  belief,  an  adult  male

residing in the Victoria, New Zealand.

64.     Defendant  Damian  Bray  was  assigned  IP  address  by  a  US  based  VPN

provider at the date shown in Exhibit "3" (No. 7).

65.     Defendant  Damian  Bray  used  the  email  address  pokeroborob@gmail.com

to login to the YTS website as shown in Exhibit "3" (No. 7).

66.     Defendant Damian Bray downloaded a copy of the Work and shared copies

of  the  Work  from  IP  address  5.181.234.76  at  including  but  not  limited  to  the  following

times:  11/28/2019  8:28:35  PM;  11/29/2019  12:19:46  PM;  11/29/2019  12:19:58  PM;

11/29/2019  9:23:18  PM;  11/29/2019  9:24:59  PM;  11/29/2019  10:25:58  PM  and

11/29/2019 10:32:45 PM.

67.     Defendant Justin McWhorter is, upon information and belief, an adult male

residing in Highland, California.

68.     Defendant Justin McWhorter was assigned an IP address by a US based

VPN provider at the date shown in Exhibit "3" (No. 12).

20-022D

69.     Defendant Justin McWhorter used the email address to login to the YTS website as shown in Exhibit "3" (No. 12).

70.     Defendant Justin McWhorter downloaded a copy of the Work and shared copies of the Work from IP address 185.245.87.51 at including but not limited to the following times: 11/25/2019 9:09:22 PM; 11/26/2019 2:46:16 AM; 11/26/2019 7:02:16 AM; 11/26/2019 12:31:31 PM; 11/27/2019 6:03:34 AM; 11/27/2019 12:03:08 PM and 11/27/2019 2:36:36 PM.

71.     Defendant Dale Powers is, upon information and belief, an adult male residing in Melbourne, Australia.

72.     Defendant Dale Powers was assigned IP address by a US based VPN provider at the date shown in Exhibit "3" (No. 15).

73.     Defendant Dale Powers used the email address to login to the YTS website as shown in Exhibit "3" (No. 15).

74.     Defendant Dale Powers downloaded a copy of the Work and shared copies of the Work from IP address 193.37.252.19 at including but not limited to the following times: 11/25/2019 9:18:10 PM; 11/26/2019 2:05:59 AM; 11/26/2019 3:11:48 AM; 11/26/2019 6:41:56 AM; 12/1/2019 4:03:30 AM and 12/1/2019 4:05:00 AM.

75.     Defendant Hector Jaramilo is an adult male residing in, upon information and belief, New York, New York.

76.     Defendant Hector Jaramilo was assigned IP address PIA at the date shown in Exhibit "3" (No. 17).

77.     Defendant Hector Jaramilo used the email address to login to the YTS

20-022D

website as shown in Exhibit "3" (No. 17).

78.     Defendant Hector Jaramilo downloaded a copy of the Work and shared copies of the Work from IP address 91.132.137.116 at including but not limited to the following times: 11/30/2019 4:20:52 AM; 12/2/2019 8:22:14 PM; 12/2/2019 8:27:05 PM; 12/2/2019 9:31:20 PM; 12/2/2019 11:08:57 PM; 12/2/2019 11:38:46 PM and 12/7/2019 7:39:02 PM.

79.     Defendant Hector Jaramilo logged into his US email address on 1/7/2020 from IP addresses 176.113.72.52 which is publicly identified as owned by M247 Ltd. and, upon information and belief, allocated to PIA.

80.     This IP addresses 176.113.72.52 is associated with significant infringement of US protected content via BitTorrent, including YTS files, including Plaintiff's Work near the time Defendant Hector Jaramilo logged into his email address from this IP address.

81.     Upon information and belief, Defendant Hector Jaramilo also used IP addresses 176.113.72.52 allocated to PIA to distribute copies of Plaintiff's Work.

## IV.     JOINDER

82.     Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that the infringement of its Work *Angel Has Fallen* complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are common questions of law and fact.  Moreover, the infringements of the Work complained of herein by each of the Defendants was part of a series of transactions over

20-022D

the course of a relatively short period of time, involving the exact same piece of the Work, and, upon information and belief, was accomplished by the Defendants acting in concert with each other.

## V.   FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyrights to the Work

83.    The Plaintiff is the owner of the copyrights in the screenplay (PAu003917080) and motion picture (PA0002197434) in the Work.  The Work is the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.

84.    Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

85.    Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

86.    The Work is a motion picture currently offered for sale in commerce.

87.    The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiff's Works.

88.    Defendants used the YTS website to download the torrent file "Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]" associated with Plaintiff's Work.

89.    The Defendants knew the torrent file they downloaded would be used to illegally download and share copies of the Work.

18

20-022D

90.     The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage.  Upon information and belief, this warning has appeared on the YTS website since at least 2018.



**B. Defendants Used BitTorrent To Infringe the Plaintiff's Copyrights.**

91.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

92.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

**1. Defendants installed a BitTorrent Client onto his or her Computer.**

93.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.   There are numerous such software programs which can be directly downloaded from the Internet.

94.     Once installed on a computer, the BitTorrent Client serves as the user's

19

20-022D

interface during the process of uploading and downloading data using the BitTorrent protocol.

95.     Each of Defendants installed a BitTorrent Client onto his computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

96.     A BitTorrent user that wants to upload the new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

97.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

98.     The initial seeder often modifies the file title of the Work to include a wording such as "RARBG" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.

99.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

100.    The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

101.    When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic

20-022D

and uncorrupted.

102.    Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

103.    The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

104.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

105.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

106.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the YTS website.

107.    Defendants went to torrent sites including the YTS website to upload and download Plaintiff's copyrighted Work.

### 4.  The Peer Identification

108.    The BitTorrent Client will assign an identification referred to as a Peer ID

20-022D

to the computer so that it can share content (here the copyrighted Work) with other peers.

109.    Each Defendant was assigned a Peer ID by their BitTorrent client.

### 5.  Uploading and Downloading a Work Through a BitTorrent Swarm

110.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

111.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

112.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

113.    In this way, all of the peers and seeders are working together in what is called a "swarm."

114.    Here, Defendants participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions, Plaintiff's Work.

115.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then

20-022D

automatically begin delivering the piece they just received to the other peers in the same swarm.

116.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

*6. The Plaintiff's Computer Investigator Identified the Defendants' IP Addresses as Participants in Swarms That Were Distributing Plaintiff's Copyrighted Work.*

117.    The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

118.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

119.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

120.    The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibit 2 accurately reflect what is contained in the evidence logs.

121.    The logged information in Exhibit 2 show that unknown individuals copied pieces of the Plaintiff's copyrighted Work identified by the Unique Hash Number.

20-022D

122.    Unknown individuals' computers used the identified IP addresses in Exhibit 2 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

123.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibit 2 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

124.    The Defendants' computers used the identified IP addresses in Exhibit "3" to connect to the investigative server from an IP address associated with this District and/or the United States in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

125.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibit 3 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

126.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

*C. The Operator of the YTS website confirmed that Defendants downloaded torrent files for copying the Work from the YTS website.*

127.    The YTS website operator maintained records of activity of registered user accounts.

128.    As shown in pgs. 2-16 of Exhibit "3", the records including the email

24

address of the registered user account, the torrent files the registered account downloaded, the IP address from where the registered user accessed the YTS website, and the time.

129.    The records show that Defendants downloaded the torrent file for reproducing the Work, the same file copy MEU's agent verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work from IP addresses either in this District and/or associated with an ISP in this District.

130.    Capture records from MEU show that Defendants were sharing copies of the Work shortly after they downloaded the torrent file from the same IP addresses.

131.    Upon information and belief, Defendants used the BitTorrent Client app to reproduce and share copies of the Work from IP addresses associated with a VPN provider such as PIA.

***C. Defendants knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiff.***

132.    A legitimate file copy of the Work includes copyright management information ("CMI") indicating the title.

133.    The initial seeder of the infringing file copies of Plaintiff's Work added wording to the file titles to "brand" the quality of piracy files he or she released and attract further traffic to his or her website.

134.    For example, the initial seeder of the infringing file copies of *Angel Has Fallen* added the wording "YTS" to the file titles to brand the quality of piracy files he or

25

she released and attract further traffic to the YTS website.

135.    The word YTS is not included in the file title of legitimate copies or streams of the Plaintiff's Works.  The initial seeders of the Work altered the title to falsely include the words "YTS" in the CMI.

136.    The file copies Defendants distributed to other peers in the Swarm included the altered CMI in the file title.

137.    Defendants knew that the website from which they obtained their torrent files was distributing illegal copies of the Work.

138.    Defendants knew that YTS was not the author of Plaintiff's Work.

139.    Defendants knew that YTS was not a licensed distributor of Plaintiff's Work. Indeed, the YTS website includes a warning to this effect.

140.    Defendants knew that the CMI that included YTS in the file names was false.

141.    Defendants knew that the file copies of the Work that they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

142.    Defendants knew that the CMI in the title they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiff.

143.    Defendants knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Work when they distributed the false CMI, altered CMI or Work including the false or altered CMI.

144.    Namely, Defendants knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files

20-022D

originated to obtained unlicensed copies of the Work.

145.    By providing the website in the altered CMI to others, Defendants induced, enabled and facilitated further infringements of the Work.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

146.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

147.    Plaintiff is the registered copyright owner of the Work which contains an original work of authorship.

148.    Defendants copied the constituent elements of the copyright protected Work *Angel Has Fallen*.

149.    Defendants also publicly performed and displayed the copyright protected Work *Angel Has Fallen*.

150.    By participating in the BitTorrent swarms with others, Defendants distributed at least a piece of the copyright protected Work *Angel Has Fallen* to others.

151.    Plaintiff did not authorize, permit, or provide consent to Defendants to copy, reproduce, distribute, publicly perform, or display the Work.

152.    As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

153.    As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to distribute copies of the Work in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

20-022D

154.   As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to perform the Work publicly, in violation of 17 U.S.C. §§ 106(4) and 501.

155.   Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

156.   Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

157.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

158.   By participating in the BitTorrent swarms with others, Defendants induced, caused or materially contributed to the infringing conduct of the copyright protected Work *Angel Has Fallen* by others.

159.   Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

160.   Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that s original.  Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

161.   The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

20-022D

162.    By engaging in the contributory infringement alleged in this Second Amended Complaint, the Defendants deprived not only the producers of the Work from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

## VIII. THIRD CLAIM FOR RELIEF

### (Digital Millennium Copyright Act Violations)

163.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

164.    Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work *Angel Has Fallen* distributed copyright management information ("CMI") that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

165.    Defendants, without the authority of Plaintiff, or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of Plaintiff and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Work *Angel Has Fallen* in violation of 17 U.S.C. § 1202(b)(2).

166.    Defendants, without the authority of Plaintiff, or the law, distributed Plaintiff's Copyright protected Work *Angel Has Fallen* knowing that the CMI had been removed or

20-022D

altered to include the wording "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Work in violation of 17 U.S.C. § 1202(b)(3).

167.   Particularly, the Defendants knew that the CMI in the file names of the pieces had been altered to include the wording "YTS".

168.   Particularly, the Defendants distributed the file names that included CMI that had been altered to include the wording "YTS".

169.   Defendants knew that the wording "YTS" originated from the notorious movie piracy website for which each had registered accounts.

170.   Defendants' acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

171.   Plaintiff is entitled to an injunction to prevent Defendants from engaging in further violations of 17 U.S.C. § 1202.

172.   Plaintiff is entitled to recover from Defendants the actual damages suffered by Plaintiff and any profits Defendants have obtained as a result of their wrongful acts that are not taken into account in computing the actual damages. Plaintiff is currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

173.   Plaintiff is entitled to elect to recover from Defendants statutory damages for their violations of 17 U.S.C. § 1202.

174.   Plaintiff is further entitled to costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

20-022D

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendants which they used to infringe Plaintiff's Work immediately cease said service;

(C) award the Plaintiff its actual damages from the copyright infringements and Defendants' profits in such amount as may be found; alternatively, at Plaintiff's election, for statutory damages pursuant to 17 U.S.C. § 504(a) and (c);

(D) award the Plaintiff actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at Plaintiff's election, for statutory damages per DMCA violation pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, January 28, 2021.


/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204

20-022D

Kailua-Kona, Hawaii 96740
Telephone:    (808) 464-4047
Facsimile:    (202) 204-5181
E-Mail:          kculpepper@culpepperip.com
Attorney for Plaintiff Fallen Productions, Inc.

20-022D