**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 20-cv-3170-RMR-NRN

FALLEN PRODUCTIONS, INC.,
    Plaintiff,

v.

DAMIAN BRAY; and
HECTOR JARAMILO,
    Defendants.

---

## ORDER

This matter comes before the court on Plaintiff's Motion for Default Judgment against Defendants Damian Bray and Hector Jaramilo, ECF 76. Plaintiff filed its Second Amended Complaint ("SAC") on January 29, 2021, at ECF 37. Default was entered against Defendant Jaramilo on April 2, 2021, ECF 65, and against Damian Bray on May 11, 2021, ECF 75. The Defendants have failed to answer or otherwise defend the allegations in the SAC, and the Plaintiff contends that it is entitled to Judgment as a matter of law. Plaintiff seeks judgment against Defendants for statutory damages, attorney fees, costs, and injunctive relief. For the reasons that follow, the Plaintiff's motion is **GRANTED in part** and **DENIED in part.**

### I. Background

Plaintiff is a corporation organized under the laws of Nevada, with its principal offices in Los Angeles, California. Plaintiffs owns the copyright in the screenplay and

motion picture of the movie *Angel Has Fallen* ('the Work"). The Plaintiff has alleged that Defendant Hector Jaramilo resides in New York and that Defendant Damian Bray resides in New Zealand.

Plaintiff alleges that the Defendants registered for paid accounts for the Virtual Private Network ("VPN") service Private Internet Access, Inc. ("PIA"), and used PIA's VPN service to download, reproduce, and distribute copies of the copyright protected Work. The Plaintiff brought this suit for direct copyright infringement, contributory copyright infringement, and Digital Millennium Copyright Act (DMCA) violations.

## II.   Legal Standard

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Pursuant to Rule 55(b)(1), default judgment must be entered by the Clerk of Court if the claim is for "a sum certain." In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). However, "a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (internal quotation marks omitted).

Before granting a motion for default judgment, the Court must take several steps. First, the Court must ensure that it has personal jurisdiction over the defaulting defendant and subject matter jurisdiction over the action. *See Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) ("Personal jurisdiction over the defendant is required before a

default judgment in a civil case may be entered"). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment."). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id*. (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

### III. Plaintiff Has Established That This Court Has Jurisdiction Over the Defendants

#### A. Subject Matter Jurisdiction

The Court is satisfied that it has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

#### B. Personal Jurisdiction

Entry of a default judgment in a civil case requires personal jurisdiction over the defendant. *Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015). When entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties;

3

rather, the court exercises its responsibility to determine that it has the power to enter the default judgment. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).

Under Tenth Circuit standards, the personal jurisdiction inquiry involves two parts. First, this court considers whether an applicable statute governs service of process. *Id.* Next, the court considers whether exercise of personal jurisdiction comports with the constitutional requirements of the Due Process clause. *Id.* Neither the federal Copyright Act, 17 U.S.C. § 101 *et seq.*, nor the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*, provides for nationwide service of process. Accordingly, this court looks to the Colorado long-arm statute to determine whether personal jurisdiction is proper. *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1094 (D. Colo. 2014).

Colorado's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1308 (D. Colo. 2012); *see also* Colo. Rev. Stat. § 13–1–124. To determine whether the exercise of personal jurisdiction comports with constitutional due process, the court analyzes whether a Defendant has sufficient minimum contacts with Colorado, such that having to defend an action here would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be general or specific. General jurisdiction arises when a defendant's contacts with a forum state are so continuous and systematic to essentially render it "at home" in a state. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 761 (2014). Specific jurisdiction is jurisdiction particular to the instant action. "To determine whether

4

the exercise of specific personal jurisdiction comports with due process, the court asks '(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice.'" *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d at 1191, 1199 (D. Colo. 2015) (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013)).

The Plaintiff here alleges that this Court has personal jurisdiction over the Defendants because the Defendants agreed to a forum-selection clause in their contract with PIA. "When registering for VPN service with PIA, Defendants agreed to PIA's forum-selection clause to be subject to the jurisdiction of Courts in Colorado. The forum-selection clause states that the "sole and exclus[ive] jurisdiction and venue for any action or proceeding arising out of or related to this Agreement shall be in an appropriate state or federal court located in the State of Colorado, county of Denver. You hereby submit to the jurisdiction and venue of said Courts. You consent to service of process in any legal proceeding." ECF 76, p. 5. "[B]y agreeing to PIA's terms," the Plaintiff argues, "Defendants' conduct has violated the terms of the Agreement with PIA and Defendants have unambiguously agreed to jurisdiction in this Court."

Chief Judge Brimmer, to whom this matter was previously assigned, appears to have already considered Plaintiff's arguments on this issue. At ECF 10, Judge Brimmer issued an Order to Show Cause why the Defendants "are found within this district under

the meaning of 28 U.S.C. § 1400(a)."[1] Judge Brimmer observed that section 1400(a) provides that "civil actions…arising under any Act of Congress relating to copyrights…may be instituted in the district in which the defendant or his agent resides or may be found. [] A defendant may be found in any judicial district to which he would be subject to personal jurisdiction." ECF 10, pp. 1-2 (internal citations omitted). While Chief Judge Brimmer addressed the issue in the context of venue, the inquiry implicitly required an analysis of personal jurisdiction. In the Order to Show Cause, Judge Brimmer explained:

> Plaintiff clams that [Defendants] have consented to venue in Colorado through purchase of the VPN, which plaintiff alleges they used to try to conceal their illicit activities. [] however, plaintiff does not specifically state that these defendants used the VPN for the alleged copyright violated in this case. [] Additionally, the forum selection clause governs actions arising under or related to the VPN Agreement, [] but these claims arise out of defendants' alleged copyright infringement while using the VPN, and not a disagreement between defendants and CISPIA about the VPN agreement. Similarly, plaintiff has not shown that [Defendants] 'solicit, transact, or are doing business within this jurisdiction, and have committed unlawful tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.

In response to Judge Brimmer's Order to Show Cause, the Plaintiff argued that the Defendants are subject to personal jurisdiction in this district, thereby satisfying 28 U.S.C. § 1400(a). The Plaintiff argued that its complaint expressly alleges that the Defendants used the VPN of PIA to distribute copies of the Work and that the IP addresses of Bray and Jaramilo were verified by Maverickeye UG. Plaintiff further argued that the

---

[1] The Order to Show Cause related to Defendant Does 3-5, 7-10, and 12-17. The Plaintiff's Second Amended Complaint reveals that Defendant Bray was initially identified as Defendant Doe 7 and Defendant Jaramilo was initially identified as Defendant Doe 17.

Defendants' actions arose out of contacts that they themselves created with the forum—they chose to purchase the VPN service from Colorado service provider PIA and agreed to be subject to jurisdiction of Colorado courts. Plaintiff also addressed Judge Brimmer's concern that the Plaintiff's claims arise out of defendants' alleged infringement while using the VPN, and not a disagreement between the parties to the PIA agreement. The Plaintiff responded that "rightsholders including Plaintiff are third-party beneficiaries of the registration agreement. [] Moreover, Plaintiff's claims for *inter alia* copyright infringement arise out of Defendants' use of PIA to distribute Plaintiff's motion picture in violation of the conduct clause. Finally…Defendants' agreement to be subject to the jurisdiction of courts in Colorado shows that Defendants expressly aimed their conduct directly at this forum." ECF 16, pp. 5-6. The Plaintiff also argued that Defendants were aware that their actions would cause injury in the forum state because they have caused liability for the Colorado company PIA. *Id.* at 6. The Plaintiff finally argued that its claims arise out of the Defendants' forum-related activities, including purchasing VPN services through Colorado Service Provider PIA and using those services to reproduce, copy, and distribute Plaintiff's work. *Id.* at 6-8.

    Chief Judge Brimmer discharged the Order to Show Cause at ECF 17, "[b]eing satisfied that cause has been shown that the District of Colorado is proper venue for this case." Although his finding was specifically directed to venue, that ruling required that he adopt the argument offered by the Plaintiff—that venue is proper because this Court has personal jurisdiction over the Defendants.

7

"The doctrine of law of the case applies to issues previously decided either explicitly or by necessary implication." *Copart, Inc. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 495 F.3d 1197, 1201 (10th Cir. 2007). Here, Chief Judge Brimmer's order decided the issue of personal jurisdiction by necessary implication, and the Court with therefore not disturb that order. Nonetheless, the Court agrees with Chief Judge Brimmer that personal jurisdiction has been established.

### IV.     Plaintiff Has Established Entitlement To Judgment

After an entry of default, the Court must decide "'whether the unchallenged facts constitute a legitimate cause of action'" such that a judgment should be entered. *Bixler*, 596 F.3d at 762 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed.1998)). Accepting the well-pled allegations in the complaint as true, and for the reasons stated herein, the Court finds that the allegations support entry of default judgment against the Defendant.

To succeed on a copyright infringement action, two elements must be met. First, the plaintiff must have a valid copyright. Second, defendant must have copied plaintiff's original work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The Plaintiff here has established that it owns valid copyrights in the Work. *See* ECF 37-1. On the second element, the Plaintiff has alleged facts establishing that Defendant Jaramilo copied Plaintiff's copyrighted work from IP address 91.132.137.116 on November 25, 2019. *See* ECF 37. The Plaintiff has also alleged facts establishing that Defendant Bray copied Plaintiff's copyrighted work from IP address 5.181.234.76 on November 26, 2019. *Id.* The Plaintiff has thus established copyright infringement.

8

To succeed on an action for contributory copyright infringement, a plaintiff must allege (i) direct copyright infringement by a third-party; (ii) knowledge by the defendant of the direct infringement; and (iii) material contribution to the infringement. *Shell v. Am. Fam. Rts. Ass'n*, 899 F. Supp. 2d 1035, 1057 (D. Colo. 2012). The Plaintiff alleges that they have met their burden here because they have alleged that Defendants "registered an account with the notorious movie piracy site 'YTS', downloaded the torrent file of the Work, and reproduced, shared and distributed copies of the Work and materially contributed to infringement by participating in a BitTorrent swarm with other users to distribute Plaintiff's work. By using BitTorrent Client to participate in the BitTorrent swarms with others, Defendant knowingly induced or materially contributed to the infringing conduct of Plaintiff's Work by others." ECF 76, p.7. The Court agrees that the Plaintiff has alleged facts to support a finding of contributory copyright infringement. The facts alleged establish the Defendants materially contributed to infringement by others with knowledge of the infringement.

The Court also finds that the Plaintiff has established entitlement to judgment on its DMCA claim. 17 U.S.C. § 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement-- distribute or import for distribution copyright management information [CMI] that is false." Section (b) further provides that "[n]o person shall, without the authority of the copyright owner or the law-- distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or [] distribute, import for distribution, or publicly perform

works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or… having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." *Id.*

The Court agrees with the Plaintiff that the file titles of the digital copies of the Work, modified with "YTS" qualifies as CMI under the statute. *See Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 277 (5th Cir. 2020) ("file name may be CMI if it is 'conveyed in connection with copies' of the underlying work and contains a 'title and other information identifying the work.'"). The Court also agrees that the Plaintiff has met the intent requirement of the DMCA because they have adequately alleged that the Defendants knew that the piracy website "YTS" was distributing illegal copies of the Work. The Plaintiff has also adequately alleged that the Defendants knew their copies were illegal by the alteration of the CMI to include "YTS," and also new that their distribution of the altered CMI would induce, enable, facilitate, or conceal infringement by the very nature of BitTorrent. The Court agrees that the allegations support a finding that the Defendants were "clearly conscious of the nefarious nature of the activity they were engaged in because they used the VPN services of the Colorado company PIA to try to conceal their illicit activities." ECF 76, p. 9.

### V.     Plaintiff Is Entitled To Statutory Damages

Under the Copyright act, an infringer of copyright is liable for either the copyright owner's actual damages or for statutory damages. 17 U.S.C. § 504(a). Pursuant to section 504(c), a copyright owner who elects statutory damages may recover "an award

of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just."

The Plaintiff in this action specifically seeks an award of $2,250 in statutory damages for the direct and contributory copyright infringements of Plaintiff's work from each Defendant. Plaintiff also seeks statutory damages of $2,500 for Defendant's CMI violations of the DMCA.

With regard to Plaintiff's DMCA violation, the Court agrees that an award of $2,500 is appropriate. Pursuant to 17 U.S.C. § 1203(c)(3)(B), "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."

The Court does not, however, find that an award of $2,250 is appropriate for the infringement. The range of statutory damages within Section 504(c)(1) reflects Congress's intent to equip district courts with discretion to award an amount that advances justice. This Court has also recognized that "infringers should not be free to 'sneer' in the face of the Copyright Act" and that "courts must put defendants on notice that it costs less to obey the Copyright Act than to violate it." *Malluk v. Berkeley Highlands Prods., LLC*, 2020 WL 1033339, at *4 (D. Colo. Mar. 3, 2020); *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988). 17 U.S.C. 504(c) provides for an award of statutory damages between $750 and $30,000. "So long as the statutory minimum and maximum amounts are observed, the trial court enjoys wide discretion in deciding the

amount of statutory damages." *Songmaker v. Forward of Kansas, Inc.*, No. 90-4156-SAC, 1993 WL 484210, at *4 (D. Kan. Sept. 13, 1993) (*citing F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952) (" 'Within these limitations the court's discretion and sense of justice are controlling, but it has no discretion when proceeding under this provision to go outside of them.")). Considering the Defendants' actions here, the court finds that an award of $2,250 would not be just. The Court finds that an award of $750 dollars is appropriate and just for the Defendants' direct and contributory copyright infringements of Plaintiff's work.

The Court thus finds that the Plaintiff is entitled to $3,250 from each Defendant for their copyright infringements of Plaintiff's work and DMCA violations.

## VI. Plaintiff Is Entitled To Injunctive Relief

"For a party to obtain a permanent injunction, it must prove: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).

The Plaintiff has established irreparable harm because the infringing conduct threatens the royalties that Plaintiff receives from its distribution agreements and interferes with its control over its copyright. *See Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996)("Because the financial impact of copyright infringement is hard to measure and often involves intangible qualities such as customer goodwill, we join the overwhelming majority of our sister circuits and recognize a

presumption of injury at the preliminary injunction stage once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits"); *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1203 (D. Utah 2014) ("Every court that has considered the question of whether unauthorized Internet streaming of television and other video programming causes irreparable harm to the copyright owners has concluded that it does."). The Plaintiff has established that the Defendants will suffer little, if any, harm from the issuance of the injunction. Plaintiff has also established that the injunction is in the public interest. The Court finds that Plaintiff is entitled to injunctive relief and hereby permanently enjoins the Defendants from directly and contributorily infringing Plaintiff's copyrights. The Court also orders Defendants to destroy all copies of the Work made or used in violation of Plaintiff's copyrights.

Plaintiff also asks the Court to enjoin PIA and M247 Ltd.--the service providers providing service for Defendants that they use to infringe Plaintiff's Work--to immediately cease providing service for the Defendants. The Plaintiff has not, however, offered any argument as to this request, nor are PIA or M247 Ltd. parties to this action. The Court therefore cannot find that the Plaintiff has met its burden of establishing an entitlement to an injunction against PIA and M247 Ltd.

### VII. Plaintiff Is Entitled To Attorney Fees

Pursuant to 17 U.S.C. Section 505, the Court has discretion to allow the recovery of "full costs" and award reasonable attorney's fees to an aggrieved party who prevails under the Copyright Act. The Plaintiff seeks $31,244.75 in fees from the two Defendants, collectively-- $15, 141.13 from Defendant Jaramilo and $16,103.62 from Bray. The Court

here agrees that the Plaintiff is entitled to attorney fees, but the Court cannot see how an award of over $30,000 is appropriate under the circumstances.

Counsel asserts that it spent approximately 115 hours on this matter, notwithstanding that the Defendants here never entered appearances or responded to the complaint. The case was initially brought against multiple defendants. Until April 1, 2021, other defendants remained in this action. Indeed, the declarations submitted by counsel in this matter show that a significant portion of the work for which it seeks compensation took place prior to April 2021. The hours for which the Plaintiff seeks attorney fees are simply not reasonable in light of the case as a whole.

In her declaration in support of request for fees, Ms. Culpepper allocates 3.125 hours to each Bray and Jaramilo for entries describing drafting, preparing, and filing the initial complaint. That complaint, however, named <u>seventeen</u> defendants. It is unclear from the declaration whether Ms. Culpepper has simply divided her time between the two remaining defendants or whether this 3.125 represents one seventeenth of the time spent drafting and filing the complaint. Regardless, neither would be reasonable. The Defendants in this action should not be forced to shoulder increased costs simply because they happened to be named in a lawsuit with over a dozen other defendants. In the event that 3.125 represents only one seventeenth of Ms. Culpepper's time on the complaint, the Court finds that over 50 hours on this single task is not reasonable.

The Court is further perplexed by the reported hours spent as to each defendant. For example, Ms. Culpepper has allocated 2.5 hours to Defendant Bray for time spent preparing the Motion for Declaratory Judgment and reviewing the court's order in *Dallas*

14

*Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025 (D. Colo. 2015)*.* There is no entry, however, allocated to Defendant Jaramilo for time spent preparing the motion or reviewing that case. Given that there was a single motion filed on behalf of both defendants, it is unclear why fees for drafting would be allocated to one defendant and not the other. Likewise, the declaration provided by Mr. Lee allocates 23 hours to Jaramilo for tasks related to the drafting of the motion for default judgment, but there are only 3.5 hours allocated for such tasks to Defendant Bray. The Plaintiff has not offered any satisfactory explanation for this apparent disconnect.

The Court thus finds that it is appropriate to reduce the Plaintiff's requested fees as follows. First, the Court declines to award fees for time spent prior to April 1, 2021. The Plaintiff has not established how it calculated the hours recorded during this time period, or how the figures relate to the number of defendants remaining in the action at any particular time. The Court finds it appropriate to award fees for time spent thereafter, but it declines to award fees for 3.75 hours spent by Mr. Lee "Proofread[ing] motion, including checking all citations and legal arguments." ECF 76-2, p. 2. The Court also declines to award fees for time billed by Stephanie Kessner. The Court further finds that the total hours calculated should be divided evenly between the defendants.

Under the above framework, Ms. Culpepper's recoverable fees amount to $2,493.75 (7.125 hours @ $350). Mr. Lee's recoverable fees amount to $5,118.75 (22.75 @ $225). Total fees are therefore, $7,612.50. The Court finds that the Plaintiff is entitled to attorney fees of $3,806.2 from each Defendant. The Court also finds that Plaintiff is

entitled to $100 in costs from Defendant Jaramilo and $700.86 in costs from Defendant Bray.[2]

## VIII. Conclusion

For the reasons stated herein, it is therefore **ORDERED** that:

1. Judgment is entered in favor of Plaintiff and against Defendants Damian Bray and Hector Jaramilo;

2. Plaintiff is entitled to $750 in statutory damages from each Defendant for direct and contributory copyright infringements of Plaintiff's work;

3. Plaintiff is entitled to $2,500 in statutory damages from each Defendant for violations of the DMCA;

4. Plaintiff's request for injunctive relief against Defendant Bray and Defendant Jaramilo is **GRANTED.** The Court hereby permanently enjoins the Defendants from directly and contributorily infringing Plaintiff's copyrights. The Court also **ORDERS** Defendants to destroy all copies of the Work made or used in violation of Plaintiff's copyrights.

**5.** Plaintiff's request for injunctive relief against nonparties PIA and M247 Ltd. is **DENIED;**

6. Defendant is **ORDERED** to pay Plaintiff's reasonable attorney fees and costs as follows:

    Defendant Bray is **ORDERED** to pay attorney fees of $3,806.25 and costs of $700.86;

    Defendant Jaramilo is **ORDERED** to pay attorney fees of $3,806.25 and costs of $100.

---

[2] This award is in line with attorney fee award in similar cases. For example, in *Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1036 (D. Colo. 2015), the Court considered Plaintiff's request for attorney fees upon entry of judgment against a defendant who was found to have infringed the Plaintiff's copyright in the motion picture *Dallas Buyers Club.* The court there awarded $2,220.00 in attorney fees for 7.4 hours of work at $300.00 an hour. The court refused, however, to award the Plaintiff's request for $1,176.40 in costs, finding that the requested amount was "approximately twice as much as this Court typically awards in similar cases," and instead award $766.40 in costs.

DATED:  March 28, 2022

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge